IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACADEMYONE, INC. | : | CIVIL ACTION |
| | : | |
| V. | : | |
| | : | |
| COLLEGESOURCE, INC. | : | NO.  08-5707 |

## <u>ORDER-MEMORANDUM</u>

**AND NOW**, this 23rd day of March, 2009, upon consideration of Defendant CollegeSource,
Inc.'s Motion to Dismiss and/or Transfer (Docket No. 8), Plaintiff AcademyOne, Inc.'s Response
thereto, and Defendant's Reply, and after hearing argument from the parties on March 19, 2009, **IT
IS HEREBY ORDERED** that the Motion is **DENIED**.

CollegeSource and AcademyOne both offer computer-assisted evaluation of college transfer
credits via the Internet and, as such, are industry competitors.  On October 27, 2008, CollegeSource
filed an action against AcademyOne in the United States District Court for the Southern District of
California (the "California Action").   CollegeSource alleges in the California Action that
AcademyOne engaged in unfair competition and exploited CollegeSource's proprietary information
when it took from CollegeSource's website certain digitized course catalogs and course descriptions
(the "Digitized Information") that were protected by "terms of use" posted on the website, and used
the Digitized Information to compete with CollegeSource.  It asserts claims under the Computer
Fraud and Abuse Act, 18 U.S.C. § 1030(g); the California Computer Crimes statute, Cal. Penal Code
§ 502(e); the California Business and Professions Code, Cal. Bus. & Prof. Code § 17200 <u>et seq.</u> ; and
California common law (for breach of contract, misappropriation, and unjust enrichment).
AcademyOne has argued in the California Action that it is not subject to personal jurisdiction in
California.   As a result, the parties are currently engaged in jurisdictional discovery, and

AcademyOne has not yet filed an Answer to CollegeSource's Complaint.

AcademyOne commenced the instant action against CollegeSource on December 8, 2008. It asserts three Lanham Act claims against CollegeSource, for false advertising, cybersquatting, and trademark infringement.  <u>See</u> 15 U.S.C. § 1125.  Specifically, AcademyOne alleges that CollegeSource both falsely advertised that it holds copyrights to the Digitized Information and registered and used a domain name that consumers are likely to confuse with AcademyOne's domain name.  In its Motion to Dismiss and/or Transfer, CollegeSource argues that we should either dismiss this action or transfer it to the Southern District of California pursuant to the First-Filed Rule or the Compulsory Counterclaim Rule.  Alternatively, it requests that we stay this action until the jurisdictional issues being litigated in California are resolved.  For the following reasons, we deny the Motion in its entirety.

When two cases are filed in separate courts and the later-filed case is "'truly duplicative'" of the previously-filed case, the First-Filed Rule permits a court to stay, enjoin, or transfer the later-filed action.  <u>Grider v. Keystone Health Plan Cent., Inc.</u>, 500 F.3d 322, 334 n.6 (3d Cir. 2007) (quoting <u>Smith v. SEC</u>, 129 F.3d 356, 361 (6th Cir. 1997));  <u>Keating Fibre Intern., Inc. v. Weyerhaeuser Co., Inc.</u>, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006) (citing <u>FMC Corp. v. AMVAC Chem. Corp.</u>, 379 F. Supp. 2d 733, 737-38 (E.D. Pa. 2005)); <u>Crosley Corp. v. Hazeltine Corp.</u>, 122 F.2d 925, 929 (3d Cir. 1941) ("'In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" (quoting <u>Smith v. McIver</u>, 22 U.S. (9 Wheat.) 532 (1824))).  To be "truly duplicative," each of the two cases "must be materially on all fours with the other," and "'the issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other.'"  <u>Grider</u>, 500 F.3d at 334 n.6 (quoting <u>Smith</u>, 129 F.3d at

361).

Here, the two pending cases are not "on all fours" with one another, and a determination of the issues in one action will not leave "little or nothing to be determined" in the other action.  Id. As stated above, the California Action concerns AcademyOne's conduct in taking and using the Digitized Information on CollegeSource's website in violation of the "terms of use" set forth on that website, and alleges violations of California common law and statutes, and the federal Computer Fraud and Abuse Act.  In contrast, the instant action contains only Lanham Act claims and concerns CollegeSource's use of a domain name that is similar to AcademyOne's, as well as its advertisement of copyrights that it may not own.  The proof in the California Action will therefore center on AcademyOne's activities and CollegeSource's proprietary interests arising out of the posted "terms of use," while the proof in the instant action will center on CollegeSource's advertising and the validity of its alleged copyrights, the latter of which will require a historical analysis of its alleged inheritance of those copyrights from its predecessor.  As even CollegeSource acknowledged at the March 19, 2009 argument, a determination regarding the validity of its copyrights will have no bearing on the success of its claims in the California Action, because those claims depend entirely on CollegeSource's "terms of use," not on copyright protection.  Likewise, whether CollegeSource's "terms of use" are enforceable and were violated by Academy will have no bearing on the determination of whether CollegeSource falsely advertised that it held copyrights to the Digitized Information.  Accordingly, we find that this case is not "truly duplicative" of the California Action, and the First-Filed Rule does not require that we dismiss, stay or transfer it.

A district court may also dismiss, transfer or stay an action pursuant to the Compulsory Counterclaim Rule if it "becomes aware that the action involves a claim that should be a compulsory

counterclaim in another pending federal suit."  6 Charles Allen Wright, Arthur R. Miller & Mary

Kay Kane, Federal Practice and Procedure § 1418 (2d ed. 1990).  Federal Rule of Civil Procedure

13(a)(1), which concerns compulsory counterclaims,  provides as follows:

> A pleading must state as a counterclaim any claim that--at the time of
> its service--the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject
> matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot
> acquire jurisdiction.

The Third Circuit has explained as follows:

> For a claim to qualify as a compulsory counterclaim, there need not
> be precise identity of issues and facts between the claim and the
> counterclaim; rather, the relevant inquiry is whether the counterclaim
> "bears a logical relationship to an opposing party's claim."  Xerox
> Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978).  The
> concept of a "logical relationship" has been viewed liberally to
> promote judicial economy.  Thus, a logical relationship between
> claims exists where separate trials on each of the claims would
> "involve a substantial duplication of effort and time by the parties and
> the courts."  Id.  Such a duplication is likely to occur when claims
> involve [many of] the same factual issues, the same factual and legal
> issues, or are offshoots of the same basic controversy between the
> parties.  See id.; Great Lakes Corp. v. Herbert Cooper Co., 286 F.2d
> 631, 634 (3d Cir. 1961).  In short, the objective of Rule 13(a) is to
> promote judicial economy, so the term "transaction or occurrence" is
> construed generously to further this purpose.

Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc., 292 F.3d 384, 389-90 (3rd

Cir. 2002) (footnote omitted).

At this point in time, we cannot say with any certainty that separate trials in these two cases

will "involve a substantial duplication of time and effort by the parties and the courts."  The only

pleadings that have been filed are the two Complaints and, as explained above, those Complaints set

-4-

forth separate and distinct claims that will require separate and distinct proofs. CollegeSource argues that both cases involve issues regarding its protectable interests in the Digitized Information. However, as stated above, the protectable interests at issue in the two cases are distinct – "terms of use" protection versus copyright protection – and CollegeSource concedes that a decision regarding the copyrights in this case will not affect its claims in the California Action. Moreover, while CollegeSource asserts that it expects to raise its "terms of use" protection as an affirmative defense in this case, we will not base a determination under the Compulsory Counterclaim Rule on speculation as to how these cases will develop in the future.

Under these circumstances and on this record, we cannot find that there is a "logical relationship" between the claims in the two cases that would give rise to a substantial duplication of effort and subvert the interests of judicial economy. Rather, it appears at this time that the two actions, although involving the same parties and the same competitive relationship, are separate and distinct and can proceed simultaneously without substantial duplication. We therefore deny CollegeSource's Motion to Dismiss and/or Transfer.

BY THE COURT:


 /s/ John R. Padova, J.
John R. Padova, J.

-5-