IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ACADEMYONE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COLLEGESOURCE, INC. | : | NO. 08-5707 |

**MEMORANDUM**

Padova, J.                                                                                    **March 16, 2010**

On December 21, 2009, we entered summary judgment in favor of Defendant CollegeSource,

Inc. ("CollegeSource") in this Lanham Act case. CollegeSource has now filed a Motion for Attorney

Fees. For the following reasons, we deny that Motion.

I.     **BACKGROUND**

Plaintiff AcademyOne, Inc. ("AcademyOne") and CollegeSource are competing companies,

both of which provide college transfer services over the internet. AcademyOne instituted this action

against CollegeSource in December of 2008, asserting claims of false advertising, trademark

infringement and cybersquatting. In the false advertising claim, AcademyOne alleged that

CollegeSource had violated  § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by falsely advertising

that it held copyrights in its course catalog materials. In the trademark infringement claim,

AcademyOne alleged that CollegeSource had violated § 43(a) of the Lanham Act by registering and

using www.collegetransfer.com as an Internet address, when AcademyOne held a unregistered

trademark in the term "collegetransfer.net." Finally, AcademyOne alleged in the cybersquatting

claim that CollegeSource had violated a provision of the Anti-Cybersquatting Act, 15 U.S.C. §

1125(d), by registering www.collegetransfer.com in bad faith and in conjunction with the launching

of a product in competition with AcademyOne.

The litigation of this case, from the very beginning, was hard-fought. After AcademyOne

filed its Complaint, CollegeSource promptly moved pursuant to the first filed-rule to dismiss or to transfer the case to the Southern District of California, where it had instituted an earlier action against CollegeSource, which was still pending.[1]  We denied that motion, see AcademyOne, Inc. v. CollegeSource, Inc., Civ. A. No. 08-5707, 2009 WL 792865 (E.D. Pa. March 23, 2009), and less than two weeks later, CollegeSource filed a Motion to Strike twenty-one portions of the Complaint, asserting that they were redundant, impertinent, immaterial, or scandalous.  However, after hearing argument on the motion, we struck only a single paragraph and denied the motion in all other respects.  (See May 12, 2009 Ord., Docket No. 42.)   We also denied AcademyOne's subsequent motion for attorneys' fees and costs it had incurred in responding to the Motion to Strike.  (See id.)

Discovery in this case was also extremely contentious.  Although only AcademyOne filed a formal, written discovery motion, both parties submitted numerous letters to the Court, seeking assistance in the resolution of discovery disputes.  As a result, we held at least five telephone conferences to address various discovery issues.   In some instances, we ruled in favor of AcademyOne and, in others, we ruled in favor of CollegeSource.   One recurring issue, which is pertinent to the instant Motion, concerned the scope of CollegeSource's obligation to produce documents pertaining to an appraisal of assets that CollegeSource obtained from College Guidance Foundation ("CGF").  Among the assets that CollegeSource obtained from CGF were course catalog materials and, CollegeSource claimed, the copyrights to those materials.  AcademyOne sought the appraisal documents because, under its theory of the case, the copyrights were not included in the appraisal and, therefore, were arguably excluded from the asset transfer.  CollegeSource argued,

---

[1]In the California action, CollegeSource alleged, among other things, that AcademyOne had taken and used course catalog materials from AcademyOne's website in violation of the terms of use attached to those materials.

however, that the operative transfer documents for the asset sale clearly showed that the copyrights were transferred, making the appraisal documents irrelevant. Taking a liberal approach to discovery, and believing AcademyOne entitled to pursue its theory of the case, we overruled CollegeSource's objections to the production of the appraisal and ordered it produced.

On June 22, 2009, before discovery was complete, CollegeSource filed a Motion for Summary Judgment. AcademyOne responded to that motion with a request for additional discovery pursuant to Federal Rule of Civil Procedure 56(f), which we granted. We then required the parties to file new, comprehensive summary judgment briefs, based on the full and complete Rule 56 record. In a detailed memorandum opinion dated December 21, 2009, we found that AcademyOne had not proffered sufficient Rule 56 submissions to support its claims. AcademyOne, Inc. v. CollegeSource, Inc., Civ. A. No. 08-5707, 2009 WL 5184491 (E.D. Pa. Dec. 21, 2009). Specifically, we found in connection with the false advertising claim that the undisputed record evidence established that CollegeSource did hold copyrights to its course catalog material, because the operative transfer documents unambiguously provided that the copyrights had been transferred.[2] Id. at*7. In addition, we concluded that the summary judgment record could not support a verdict in AcademyOne's favor on the trademark infringement and cybersquatting claims because it did not support a reasonable conclusion that collegetransfer.net was a protectable trademark as of the date that CollegeSource first used collegetransfer.com. Id. at *16-*17. We therefore granted summary judgment in CollegeSource's favor on all three counts of the Complaint. Two weeks later, on January 4, 2010, CollegeSource filed its Motion for Attorney Fees, seeking to recover $712,000 in fees and costs that

---

[2]In this regard, we agreed with CollegeSource that the appraisal documents that AcademyOne had pursued in discovery were ultimately irrelevant. See id. at *5-*6.

it had incurred in defending against this action.

## II.    DISCUSSION

In the Motion for Attorney Fees, CollegeSource argues that this an "exceptional" case for which the Lanham Act permits the prevailing party to recover reasonable fees and costs. We find, however, that an award of attorney fees and costs is not warranted under the standards set forth in the Lanham Act and interpretive case law.

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). While the statute does not define the phrase "exceptional case," the United States Court of Appeals for the Third Circuit has stated that "an exceptional case . . . must involve culpable conduct on the part of the losing party." Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 280 (3d Cir. 2000) (citing Ferrero U.S.A, Inc. v. Ozak Trading, Inc., 952 F.2d 44, 47 (3d Cir. 1991)). Culpable conduct is conduct "such as bad faith, fraud, [or] malice." Id. (quoting Ferrero, 952 F.2d at 47). "In cases in which the defendant is the prevailing party in a trademark infringement case and seeks fees from the plaintiff, the plaintiff's culpable conduct will necessarily center on the act of filing the lawsuit . . . ," id., and can include other litigation conduct. Id. at 280-81 (citation omitted). "If the District Court finds culpable conduct, it must next decide whether the circumstances [surrounding that conduct] are 'exceptional' enough to warrant a fee award." Green v. Fornario, 486 F.3d 100, 103 (3d Cir. 2007) (citing Ferrero, 952 F.2d at 49). "[W]hether a case qualifies as exceptional ultimately turns on consideration of the equities in full." Securacomm, 224 F.3d at 281. In assessing the equities, a court must consider "the totality of the circumstances in each case." Id. Ultimately, the decision whether to award fees in a particular case is a matter within the district court's discretion. Ferrero,

952 F.2d at 48.

In this case, we simply can find no measure of culpable conduct in AcademyOne's litigation conduct, much less culpable conduct under a totality of circumstances that could be considered exceptional. CollegeSource argues that the case was initiated in retaliation for the action it had commenced against AcademyOne in California. However, in our view, AcademyOne was legitimately troubled by CollegeSource's registration and use of a web address that was so similar to the web address that AcademyOne had been using for seven months prior. Moreover, AcademyOne understandably questioned CollegeSource's advertising that it held copyrights in its course catalog materials, when the circumstances surrounding the asset transfer raised questions about its validity, and when CollegeSource instituted suit against AcademyOne in California for misappropriating its course catalog materials but did not assert a claim in copyright. We therefore conclude that AcademyOne's initial filing of this action was not retaliatory and did not constitute culpable conduct but, to the contrary, was entirely reasonable.

CollegeSource also attempts to characterize AcademyOne's conduct as the litigation progressed as being in bad faith or oppressive. According to CollegeSource, AcademyOne should have been aware of the "fatal defects" in its case no later than June 22, 2009, when CollegeSource filed its motion for summary judgment, and should have voluntarily dismissed its claims at that time.[3] (CollegeSource Br. at 4.) However, as explained above, when CollegeSource first filed its

_____

[3] At the same time, CollegeSource argues that AcademyOne's conduct was culpable insofar as it abandoned certain false advertising theories after CollegeSource filed for summary judgment. (CollegeSource Br. at 15.) We cannot reconcile this argument with the argument that AcademyOne engaged in culpable conduct by refusing to dismiss claims that had "fatal defects." Moreover, to the extent that AcademyOne abandoned claims that it concluded, after full discovery, could not prevail, we applaud that conduct rather than condemn it.

summary judgment motion in June, discovery was not yet complete and, in fact, we ruled that AcademyOne was entitled to additional discovery before the motion could be decided. Moreover, when the summary judgment motion was finally ripe for disposition, the issues it presented were complex, and AcademyOne made colorable arguments in response to the motion. Although we ultimately ruled in CollegeSource's favor, we did not consider AcademyOne's arguments to be frivolous or unreasonable; they simply did not prevail under the Rule 56 standard. Accordingly, we reject CollegeSource's assertion that AcademyOne engaged in "culpable conduct" in defending against CollegeSource's summary judgment motion rather than voluntarily dismissing its claims upon receipt of that motion.[4]

CollegeSource also claims that AcademyOne's litigation conduct was oppressive insofar as AcademyOne redefined its false advertising claim on summary judgment, redefined the goods and/or services that were associated with its alleged trademark, and "changed its mind" regarding the remedies it was seeking insofar as it abandoned any claim for damages after CollegeSource's summary judgment motion was filed. (CollegeSource Br. at 15-16.) However, as CollegeSource acknowledges, we did not permit AcademyOne to redefine its false advertising claim on summary judgment. Consequently, CollegeSource cannot credibly argue that it suffered any meaningful harm

_____

[4]CollegeSource asserts that AcademyOne's continued pursuit of its false advertising claim, including discovery regarding the asset appraisal, after it was provided the unambiguous asset transfer documents, was designed to "embroil CollegeSource in a dispute with the California Attorney General rather than [to be] any legitimate attempt to prove its false advertising claim." (CollegeSource Br. at 7.) In support of this assertion, CollegeSource points to an admission by AcademyOne's president that he contacted the California Attorney General's office about what he believed to be tax fraud in connection with the transfer of assets from CGF to CollegeSource. However, the fact of this phone call does not change our conclusion that AcademyOne's false advertising claim against CollegeSource was neither frivolous nor malicious. Although we ultimately found the appraisal documents to be irrelevant to the dispute before us, we do not fault AcademyOne for pursuing them in discovery or for advancing a theory that took them into account.

on account of AcademyOne's rearticulation of its false advertising claim and, as a result, the equities do not dictate that attorney fees be awarded on account of this conduct. Similarly, we do not credit CollegeSource's argument that it would have been less aggressive in defending the case had it known that AcademyOne would drop its damages claims. Indeed, we cannot square this argument with the fact that CollegeSource repeatedly refused to talk meaningfully about settlement, even rebuffing overtures to settle for no monetary damages. Finally, we acknowledge that we, like CollegeSource, were frustrated by AcademyOne's inability to clearly articulate the goods and/or services associated with its alleged trademark. See, e.g., AcademyOne, 2009 WL 5184491, at *10. We nevertheless conclude that AcademyOne's inconsistent descriptions of its goods and services do not render this case an "exceptional" one that was marked by bad faith, malice, or fraud, or that otherwise warrants AcademyOne's payment of CollegeSource's attorney fees and costs as a matter of equity. We reiterate, to the contrary, that AcademyOne's conduct throughout this litigation was reasonable and did not constitute culpable conduct in an exceptional case under the controlling Lanham Act standards.

## III. CONCLUSION

For the foregoing reasons, we deny CollegeSource's Motion for Attorney Fees. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.